# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

        v.                            **CRIMINAL NO. 10-433 (PAD)**

IVAN RENTAS-FELIX,

    Defendant.

## OPINION AND ORDER

Delgado-Hernández, District Judge.

This case raises issues related to discovery, evidentiary sufficiency, and the extent to which dismissal of a state charge precludes consideration of the conduct underlying the charge in a revocation proceeding for violation of a condition of supervised release under 18 U.S.C. § 3583. Defendant Iván Rentas-Félix was convicted in federal court, sentenced to a term of imprisonment, and subsequently placed on supervised release.  While on supervised release, he was arrested in Puerto Rico for alleged violations of the Commonwealth's Penal Code and Weapons Law.  The local court found probable cause for defendant's arrest, albeit not to indict him. Before the court are the government's requests to revoke defendant's term of supervised release for having violated the condition that he shall not commit a state crime, and that he be sentenced to the maximum statutory term of imprisonment (Docket No. 66 at p. 13; Docket No. 73 at p. 2).

Defendant opposes the government's requests because, in his view: (1) the only evidence linking him to a crime should be stricken on account of what he characterizes as the government's violation of Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure; (2) even if such evidence were not stricken, it

would be insufficient to establish a violation of conditions of release; and, in any event, (3) the Supreme Court's decision in Puerto Rico v. Sánchez-Valle, ---U.S.---, 136 S.Ct. 1863 (2016) requires the court to accord preclusive effect to the state court's "no-probable cause to indict" ruling respecting the offenses on account of which revocation is sought here (Docket No. 68 at pp. 12-13; Docket No. 70 at p. 3).

After a careful examination of the motions, arguments raised, supporting authorities and the record as a whole, including testimony and exhibits presented during the final revocation hearing, the court concludes that for purposes of revocation, defendant violated a condition of supervised release by engaging in aggravated battery.  That he cannot be prosecuted in Puerto Rico to the point of conviction due to absence of probable cause to indict, does not preclude a finding under 18 U.S.C. § 3583 that he engaged in the conduct underlying the dismissed state charge.  In the end, the condition of supervised release is that he shall not violate the law, not that there be no conviction for violating it.  Under these circumstances, courts look beyond the bare fact that a charge has been dismissed and evaluate whether the evidence presented in the revocation hearing is sufficient to conclude that defendant engaged in the behavior underlying the dismissed charge.

The Double Jeopardy Clause, and by extension, Sánchez-Valle do not require a different result, for they do not apply either to the state court hearings where no probable cause is found to indict or to revocation proceedings.  The asserted discovery violations do not justify exclusion of evidence from this case.  Therefore, defendant's supervised release is revoked.  Nevertheless, as called for in Rule 32.1(b)(2)E) of the Federal Rules of Criminal Procedure, defendant will be provided with the opportunity to address the court prior to sentencing.  For the same reason, the government's requests are GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE.

United States of America v. Iván Rentas-Félix
Criminal No. 10-433 (PAD)
Opinion and Order
Page 3

# I.   __INTRODUCTION__

On November 10, 2010, defendant was charged with knowingly possessing in, an affecting interstate commerce a firearm shipped and transported in interstate and foreign commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(c) (Docket No. 3).   On January 20, 2011, he pled guilty as charged (Docket No. 20).   On May, 12, 2011, he was sentenced to, *inter alia*, a term of imprisonment of 57 months followed by a supervised release term of 3 years subject to the condition that he shall not commit another federal, state, or local crime (Docket No. 25; Docket No. 26 at p. 3).   On March 5, 20115, he was released from prison, commencing the term of supervised release (Docket No. 29).   The term is due to expire on March 5, 2018.   Id.

On July 8, 2016, the United States Probation Officer requested that a warrant be issued for defendant's arrest so that he be brought before the court to show cause as to why his supervision term should not be revoked on account of having committed a state crime (Docket No. 29).   On July 11, 2016, defendant was temporarily detained pending further proceedings (Docket No. 33).   On August 2, 2016, U.S. Magistrate Judge Silvia Carreño-Coll found probable cause to revoke supervisory release, and ordered defendant detained pending the final revocation hearing (Docket No. 39).

The final revocation hearing was held on September 16, 2016 (Docket No. 57), and October 27, 2016 (Docket No. 65).   On September 28, 2016, the Court of First Instance of Puerto Rico ("CFI") held a preliminary hearing, finding no probable cause to indict defendant for the offenses on account of which revocation was requested here (Docket No. 68, Exhibit D).   On November 17, 2016, defendant was ordered released from custody and placed under Home Incarceration with electronic monitoring, awaiting the ruling of the CFI in a second preliminary hearing on the same

offenses (Docket No. 72).  On December 13, 2016, the Probation Officer informed that the CFI issued a no probable cause ruling (Docket Nos. 74 and 76).

## II.   DISCUSSION

As stated above, one of the conditions of defendant's supervised release is that he not commit another federal, state or local crime.  However, on June 7, 2016, he was arrested after allegedly assaulting Mr. Luis Corcino.  At a hearing pursuant to Rule 6 of the Puerto Rico Rules of Criminal Procedure during which the CFI heard Mr. Corcino's testimony, it found probable cause to arrest defendant as charged in the criminal complaint, for aggravated battery in violation of Article 109 of the Puerto Rico Penal Code, and for carrying and using a bladed weapon in violation of the aggravated modality of Article and 5.05 of the Puerto Rico Weapons Law (Exhibit to Docket No. 29 at pp. 1-2; Docket No. 68, Exhibits B, C).  Based on such probable cause determination, the U.S. Probation Officer filed the motion at Docket No. 209 that initiated this revocation proceeding.

### A.   Discovery Obligations

During the final revocation hearing, the government presented the testimony of Puerto Rico Police Officer Luis Torres-Padilla, and Mr. Corcino.  Defendant complains the government failed to provide him with the audio recording of Mr. Corcino's CFI testimony before cross examination, and as such, requests that the testimony be stricken under Brady, the Jenks Act, and Rule 26.2 of the Criminal Rules of Criminal Procedure (Docket No. 68 at pp. 3, 12; Docket No. 70 at p. 3).  He argues that without that testimony, there is no evidence justifying revocation (Docket No. 68).

#### 1.   Brady v. Maryland

In Brady, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  373 U.S. at

87.  In Giglio v. United States, 405 U.S. 150, 154 (1972), it included within the category of

exculpatory evidence subject to disclosure, any witness impeachment information if the reliability

of the witness may be determinative of the defendant's guilt or innocence.  And in United States

v. Agurs, 427 U.S. 97 (1976), it ruled that the duty to disclose operates even though there has been

no request by the accused.

Because Brady applies to evidence material either to guilt or punishment and revocation

proceedings are not criminal prosecutions, some courts have questioned whether Brady operates

in revocation proceedings.  See, United States v. Ataya, 145 Fed.Appx. 331, 333 n.2 (11th Cir.

August 17, 2005)(pointing out that Brady only applies to criminal prosecutions, not to revocation

hearings); United States v. Jackson, 2009 WL 1690300, *1 (E.D. Ark. June 16, 2009)("Defendant

has cited, and I can find, no authority to support his position that Brady applies to revocation

proceedings-in fact, the case law is to the contrary").[1]  Assuming Brady applies here, however,

defendant's challenge cannot stand.

To prevail on a Brady claim, defendant must prove that exculpatory or impeachment

evidence was suppressed, and suppression was prejudicial.  See, United States v. Paladin, 748

F.3d 438, 444 (1st Cir. 2014)(identifying elements of a Brady claim).  To that end, the evidence

must be material.  Id.  Evidence is material when a reasonable probability exists that the result of

the proceeding would have been different if the suppressed evidence had been disclosed.  See,

United States v. Brown, 510 F.3d 57, 71 (1st Cir. 2007)(so noting).  A reasonable probability is a

---

[1] See also, Gonzales v. Bartos, 2009 WL 825812,*15 (D.Ariz. Mar. 30, 2009)(revocation proceedings are not criminal prosecutions, and thus are not subject to the strictures of Brady); United States v. Berger, 976 F.Supp. 947, 950 (N.D. Cal. 1997)("Berger has cited no authority for applying Brady to a probation revocation proceeding and there is law to the contrary")(internal citations omittred).

probability sufficient to undermine confidence in the outcome.  United States v. Bagley, 473 U.S. 667, 682 (1985).  Brady only applies to information which had been known to the prosecution but unknown to the defense.  See, United States v. Soto-Álvarez, 958 F.2d 473, 477 (1st Cir. 1992)(so holding).

The evidence at issue is the recording of Mr. Corcino's testimony in a hearing before the CFI.  The defendant attended the hearing and was represented by counsel, albeit not the same attorney that represents him in the revocation proceeding.  He informed his revocation attorney that Mr. Corcino had so testified (September 16, 2016 Hearing Transcript at pp. 137, 138).  And he is using the services of an investigator here.  Id. at pp. 1, 55, 56, 86, 130.  There is no room to conclude that Mr. Corcino's statement was known to the prosecution but not to him.  In fact, he could have subpoenaed the statement himself.  See, United States v. Celestin, 612 F.3d 14, 22-23 (1st Cir. 2010)(finding no Brady violation where, in part, defendant was aware of potentially exculpatory records and failed to subpoena them)(citing United States v. Todd, 424 F.3d 525, 534 (7th Cir. 2005)).[2]

Defendant states he undertook cross examination without the benefit of the prior statement (Docket No. 70 at p. 2).  But it is not enough for a defendant to merely assert that he would have conducted cross-examination somewhat differently.  See, United States v. Bender, 304 F.3d 161, 165 (1st Cir. 2002)(so stating).  At the very least, he needs to show that a plausible strategic option was foreclosed by the delay.  Id.  To that end, the court gave defendant ample leeway to cross examine the government's witnesses, and in the case Mr. Corcino-over the government's repeated objections- to even ask questions on incidents dating back to 2015, 2011, and 2008.  Yet defendant

---

[2] See also, United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir.  2002)(Brady not violated where defendant could have obtained evidence through reasonable diligence).

has not shown how not having had the recorded statement until after the witnesses testified prejudiced his defense. See, Soto-Álvarez, 958 F.2d at 477 (rejecting Brady claim on account of similar failing); Celestin, 612 F.3d at 23 (pointing out that defendant failed to sustain a Brady claim in part because he failed to explain how his strategy would have been different if he had obtained records earlier).[3] The fact that the purported Brady material was not produced before cross examination did not prejudice defendant and does not require the exclusion of Mr. Corcino's testimony.[4]

### 2. Jencks Act/Rule 26.2

#### a. Framework

##### i. *Jencks Act*

In general, the Jencks Act, 18 U.S.C. § 3500, requires the government to provide, upon request, certain prior statements made by trial witnesses. See, United States v. Schneiderhan, 404 F.3d 73, 79 (1st Cir. 2005)(summarizing statute). It has its roots in Jencks v. United States, 353 U.S. 657 (1957), a case involving a prosecution for filing false noncommunist affidavits with the National Labor Relations Board, in which the Supreme Court held that the defense in a federal criminal prosecution was entitled, under certain circumstances, to obtain, for impeachment purposes, statements which had been made to government agents by government witnesses. Id. The decision gave rise to sharp controversy. See, Palermo v. United States, 360 U.S. 343, 346 (1959)(so acknowledging); 2A Wright and Miller, *Federal Practice and Procedure, Federal Rules*

---

[3] See also, Leyja v. Parker, 404 Fed.Appx. 291, 296 (10th Cir. December 9, 2010)(rejecting Brady claim because defendant did not show how the suppressed evidence would have been used as impeachment to further his defense); United States v. Simms, 385 F.3d 1347, 1357 (11th Cir. 2004)(no Brady violation as defendant did not explain how he suffered any prejudice with respect to information in question).

[4] Even more, defendant provides no explanation of how the recording qualifies as potentially exculpatory or impeaching evidence, a relevant factor in evaluating Brady claims. See, United States v. Koetting, 74 F.3d 1238 (5th Cir. December 8, 1995)(no Brady claim considering that defendant did not explain why notes and reports at issue were potentially exculpatory or impeaching).

United States of America v. Iván Rentas-Félix
Criminal No. 10-433 (PAD)
Opinion and Order
Page 8

*of Criminal Procedure*, § 436 at pp. 238-239 (2009 Ed.).  Congress responded by enacting a statute

on the subject, Pub. L. No. 85-269, 71 Stat. 595 (1957), the Jencks Act, which became law as §

3500 of the Criminal Code, 18 U.S.C. § 3500.

As originally enacted, the statute only applied to production of statements given by a

government witness to an agent of the government.  In 1970 it was amended to eliminate that

limitation.  Pub. L. 91-4, 84 Stat. 926 (1970).  From that point, Jencks statements include: (1)

written statements made, adopted, or approved by the witness; (2) recordings (or transcription

thereof) that are a substantially verbatim recital of an oral statement made by the witness and

recorded contemporaneously with the making of the oral statement; and (3) statements (or

transcription thereof) made by the witness to a grand jury.  18 U.S.C. § 3500(e).  The statements

must be made available upon request for cross examination provided they relate to the subject

matter of that witness' testimony.  18 U.S.C. § 3500(b).  Prejudice must be demonstrated to prevail

on a Jencks claim.  See, Schneiderhan, 404 F.3d at 79 (so noting).

ii.    *Rule 26.2*

In the main, Rule 26.2 provides that after a witness other than the defendant has testified

on direct examination, the court, on motion of a party who did not call the witness, must order an

attorney for the government, or the defendant and the defendant's attorney to produce, for the

examination and use of the moving party, any statement of the witness that is in their possession

and that relates to the subject matter of the witness's testimony.  Fed.R.Crim.P. 26.2(a).  It was

added to the Federal Rules of Criminal Procedure effective December 1, 1980.[5]  Its purpose was

---

[5] In 1979, the Supreme Court promulgated a series of amendments to the Criminal Rules, providing that they should become effective on August 1 of that year.  Congress allowed some of the amendments to become effective on that date, but postponed the effectiveness of those amendments that it regarded as particularly controversial or far-reaching.  See, 2A Wright and Miller, *Federal Practice and Procedure, Federal Rules of Criminal Procedure*, § 436 at p. 245 (describing enactment process).  Rule 26.2 was among the amendments postponed.  Those amendments were not to take effect until December 1, 1980, or until and then only to

to place in the criminal rules the substance of the Jencks Act, in recognition of the belief that provisions which are purely procedural in nature should appear in the Federal Rules of Criminal Procedure rather than in Title 18.  See, Fed.R.Crim.P. 26.2 advisory committee note (1979) (so recognizing).[6]

Even though courts had generally declined to extend the Jencks Act beyond the confines of actual trial testimony, Fed.R.Crim.P. 26.2 advisory committee note (1993)(so observing), the result was obviated by the addition of Rule 26.2(g), which provides that Rule 26.2(a)-(d) and (f) applies in revocation hearings under Rule 32.1 of the Federal Rules of Criminal Procedure.  In connection with production violations, Subpart (e) of Rule 26.2 states that "[i]f the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness' testimony from the record."  Fed.R.Crim.P. 26.2(e).  The text is substantively similar to Subsection (d) of the Jencks Act, 18 U.S.C. §3500 (d).  See, United States v. McGregor, 785 F.Supp.2d 1253, 1256 (M.D. Ala. 2011) (noting similarity).  For the same reason, and like under the Jencks Act, a showing of prejudice is necessary to prevail on a Rule 26.2 claim.  See, United States v. Musick, 291 Fed.Appx. 706, 727 (6th Cir. August 29, 2008)(so holding).

b.  Analysis

The government had not provided defendant with copy of Mr. Corcino's recorded statement by the time Officer Torres and Mr. Corcino testified and were cross examined.  The recording, however, was obtained and made available to the defendant thereafter.  Neither the

---

the extent approved by an Act of Congress, whichever was earlier.  Id. (citing Pub. L. No. 95-42, 93 Stat. 326 (1979)).  In that progression, Rule 26.2 became effective on December 1, 1980.

[6] Contrary to the Jencks Act, however, which only imposes obligations on the government, Rule 26.2 imposes obligations on both the government and the defense.  See, Fed.Crim. P. 26.2 advisory note (1979)("The rule . . . is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500 . . . ").

Jencks Act nor Rule 26.2 (e) was meant to cover situations such as this one, where a party does, ultimately, produce required statements.  See, McGregor, 785 F.Supp.2d at 1256 (so holding).[7]  The government did not act in bad faith or violate a court order to produce the recording.[8]

After the recording was produced, the court provided defendant with the opportunity to reopen the cross examination of the government's witnesses (Docket No. 67).  But defendant declined the opportunity (Docket No. 70 at p. 4).  So he cannot complain of prejudice.  See, United States v. Dupuy, 760 F.2d 1492, 1497 (9th Cir. 1985)(holding that government's late disclosure of statement by a government's witness did not require reversal under the Jencks Act where the defendants were allowed a second change to cross-examine the witness); McGregor, 785 F.Supp.2d at 1257 (finding no Jencks Act or Rule 26.2 (e) violations where court re-opened hearing as to agent in question).  On these facts, he cannot prevail under Rule 26.2 of the Federal Rules of Criminal Procedure or, by extension the Jencks Act, even assuming the Jencks Act applies in revocation proceedings.[9]

---

[7] See also, *Federal Practice and Procedure, Federal Rules of Criminal Procedure,* supra at § 439, pp. 283-284 ("The language about sanctions in the Jencks case itself, in the Jencks Act, and in Rule 26.2 all appears to be directed to the situation in which a conscious choice has been made not to comply with a production order.  In that situation, it seems quite appropriate that the party should suffer the consequences of its election.  It is different, however, if the nonproduction is the result of oversight or negligent conduct not amounting to a conscious election.  Situations of this kind do not seem to have been contemplated by Rule 26.29e) or its statutory predecessor.  In such situations, the court ought to be free to apply whatever remedy the justice of the case may require under the circumstances").

[8] The government met with a state prosecutor but there was no recording in the file (Transcript at p. 32).  It inquired from PRPD officers Luis Torres and Ángel López, who said they were not aware of any recordings of testimony by Mr. Corcino.  Id. at p. 33.  Officer López testified at the preliminary revocation hearing and Officer Torres testified at the final revocation hearing.  After the hearing of September 16, 2016, the government issued a Subpoena for the audio recording, addressed to the Administrator of the Río Grande Tribunal where the Rule 6 hearing was conducted (Docket No. 63).  The Subpoena was served on the Tribunal's Clerk on September 28, 2016.  Id.  It was returned with copy of the recording via regular mail (contrary to the express request in the subpoena).  The Probation Officer delivered the recording thus obtained to both parties on November 3, 2016.

[9] In point of clarification, the government's obligation under the Jencks Act and Rule 26.2 only extends to information in its possession, custody, or control, not to information possessed by agents not working with the prosecution nor acting on its behalf.  United States v. Bender, 304 F.3d 161, 164 (1st Cir. 2002).  The same operational parameters apply under Brady.  See, United States v. Hall, 434 F.3d 42, 55 (1st Cir. 2006)(discussing Brady obligations).  In this context, the government's duty to disclose imposes upon the prosecutor the duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.  See, Moreno-Morales, 334 F.3d at 146 (so noting in context of Brady claim). But the duty does not extend to information possessed by government agents not working with the prosecution.  Id. (so recognizing while concluding that no Brady violation took place with regard to information maintained by state courts and there was no evidence that the federal prosecutor or any agent working on her behalf had this information prior to or during trial).  Similarly, the State's knowledge and

United States of America v. Iván Rentas-Félix
Criminal No. 10-433 (PAD)
Opinion and Order
Page 11

### B.   **Sufficiency of Evidence**

Pursuant to 18 U.S.C. § 3583(a), the court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment.  For its part, 18 U.S.C. § 3583(d) provides that the court shall order, as an explicit condition of supervised release, that defendant not commit another Federal, State, or local crime during the term of supervision, among other mandatory conditions of release.  Accordingly, defendant was placed on supervised release with the condition that he not commit another Federal, State, or local crime (Docket No. 26).

The instant revocation proceeding was initiated after defendant was arrested and charged in a criminal complaint with aggravated battery in violation of Article 109 of the Puerto Rico Penal Code and for carrying and using a bladed weapon in violation of the aggravated modality of Article and 5.05 of the Puerto Rico Weapons Law.  Under 18 U.S.C. § 3583(3), the court may revoke a term of supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of release.  See, United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993)(applying preponderance of evidence standard to revocation of supervised release); United States v. McCormick, 54 F.3d 214, 219 (5th Cir. 1995)(same).  Measured by this standard, defendant engaged in criminal activity proscribed by Article 109 of the Penal Code, in the aggravated modality set in Article 110 of the Puerto Rico Penal Code.

---

possession of potential impeachment evidence cannot, without more, be imputed to a federal prosecutor for purposes of establishing a Brady violation.  Id. at 146-147.  For the same reason, a witness' statement before a state grand jury and non-federal investigating authorities does not constitute Jencks material because it is not material within the possession, custody or control of the Government.  See, United States v. Molt, 772 F.2d 366, 371 (7th Cir. 1985).  Given how the discovery issues have been disposed of, the court need not evaluate whether, for present purposes, Mr. Corcino's recorded statement was within the government's possession, custody or control.

Article 109 states that any person who illegally through any means or form inflicts injury to the bodily integrity of another shall incur a misdemeanor. P.R. Laws Ann. tit. 33 § 5161. Article 110 aggravates the offense, considering it a felony, if it causes an injury requiring hospitalization, extensive treatment, knowingly transmits a disease, or mutilates the victim. P.R. Laws Ann. tit. 33 § 5161. In turn, Article 5.05 prohibits the use against another person of brass knuckles, blackjacks, bludgeons, ninja stars, knives, daggers, swords, slings, rapiers, harpoons, curved knives, stilettos, air guns, ice picks, or any other similar object that may be deemed to be a bladed weapon, including safety razor blades, cudgels, and hypodermic needles, or syringes with needles or similar instruments, and the unsheathing, showing or use of these objects to commit or attempt to commit a crime. P.R. Laws Ann. tit. 25 § 458d.

Against this backdrop, Mr. Corcino testified that on June 6, 2016, he was attacked by three males (Transcript at p. 96). The first one attacked him with a punch on his left eye, whereas the others hit him and battered him with a stick. Id. One of the individuals goes by the name of Fosforito; another by Hijo de Paleto. Id. He knows Fosforito from around the neighborhood. Id. at p. 96. Fosforito is defendant's nickname. Id. at pp. 12-13. Mr. Corcino said that the day of the event he was going home and came across Fosforito, who called him a snitch and that he (Mr. Corcino) had to leave the neighborhood. Id. at p. 97. Mr. Corcino replied that he was not leaving because he was from there, and at that point Fosforito hit him with a punch an told the others to get Mr. Corcino out of there. Id. The other two individuals came out of the car and ran after Mr. Corcino. Id.

Mr. Corcino stated that Fosforito got into the car, started the engine, drove by his side, stopped one block down in front of a business near Mr. Corcino's house. Mr. Corcino took a detour, but the individuals continued chasing him, captured him and battered him. Hijo de Paleto

held into him, one of the assailants came by and struck him with a two by two board, the three of

them kept giving him kicks, and Fosforito punched him.  Id. at pp. 97-99.  Also, he mentioned that

one of the individuals hit him with a stick while Forsforito was looking.  Id. at p. 102.  Paramedics

and the police arrived, found Mr. Corcino bleeding on the ground, and took him to the hospital,

where "they took four stiches on a wound below his eye."  Id. at pp. 98-100.

Defendant admits "there is no doubt" that Mr. Corcino had an altercation with someone on

June 6, 2016, and suffered injuries as a result of the altercation, but argues that ". . .there is any

evidence that defendant was a  participant in whatever transpired on June 6, 2016. . . " (Docket

No. 68 at p. 4).  He characterizes Mr. Corcino's testimony as ". . . inherently incredible, unreliable

and uncorroborated . . ." Id. at p. 12.  In that regard, he points out that Mr. Corcino was inebriated,

has a thirty-year history of rampant alcohol consumption, and admitted to an extensive history of

criminal activity.  Id. at pp. 9-10.

During cross examination, Mr. Corcino described himself as an alcoholic.  Id. at p. 107.

He drinks alcohol every day.  Id.  He can drink two or three flasks a day, but on the day of the

incident had drank one flask.  Id. at p. 108.  He has been drinking on a daily basis since his mother

was murdered when he was eight years old.  Id.  He is forty-three years of age.  He stated that on

the day of the event, he started drinking at about ten o'clock in the morning, and by the time the

incident occurred he had been drinking rum for four hours, but not straight through.  Id. at pp. 106,

107.  He admitted that daily consumption of alcohol affects his ability to perceive and remember,

but what they did to him was abusive.  Id. at p. 109.  He denied the incident was a fabrication, Id.

at p. 110, and identified defendant in court.  Id. at p. 101.

Ms. Chanishka Bonano, one of the paramedics who tended to Mr. Corcino after he was

beaten, said that when she arrived at the scene Mr. Corcino was on the ground with multiple

traumas.  He told her that he had been drinking during the afternoon and evening, and that he was stunned, dazed, and dizzy.  He had odor of alcohol on his breath.  She wrote in a patient sheet she prepared that Mr. Corcino was "enebriated" that night. Id. at p. 94.  Her statement that Mr. Corcino had alcohol that day was based on what he said, the way he looked, and the odor.  Id. at pp. 90, 91.  However, she said that it was possible he was dizzy because he had been attacked with a stick. Id. at p. 91.  She observed blood on Mr. Corcino's hands, contusions on his chest, and an open wound, a cut or laceration below his left eye.  Id. at pp. 92, 93.  Further, she saw a contusion on the left side of Mr. Corcino's head.  Id. at p. 92.  And based on her professional experience and education as a paramedic, the contusion is consistent with an aggression using a stick, Id., and the eye wound consistent with a fist.  Id. at p. 93.

The account that Mr. Corcino provided is credible.  He did say that the incident occurred in the afternoon rather than at night, when paramedics and the police arrived at the scene.  But time is not a critical element here, for no evidence was presented to suggest, much less establish that defendant could not have been involved in the assault during the time frame to which Mr. Corcino referred in his testimony.  Similarly, Mr. Corcino was consistent in his testimony and in the statement he provided to the PRPD shortly after the event.  See, Defendant's Exhibit B (PRPD Interview Sheet, June 7, 2016)

PRPD Officer Torres testified that on June 6, 2016, while on patrol he received by radio a report of an injured person (Transcript at p. 5).  When he appeared at the reported location around 9:30 pm to 10:00 pm, paramedics where stabilizing a person sitting on the ground.  Id. at pp. 6, 8, 70.  That person was Mr. Corcino. Id. at p. 6.  From Officer Torres' account, Mr. Corcino was

visibly injured in the face, and had blood in his face and shirt.  Id.[10]  Officer Torres interviewed

him at the location and in the hospital where he was taken for treatment.  Id. at p. 8.  Mr. Corcino

said that he had been struck or hit with a stick, which was lying near him in the scene.  Id. at p. 9.

Mr. Corcino was speaking coherently and clearly, except that he seemed to be somewhat fearful.

Id. at p. 10.  He was transported to the hospital in an ambulance.  Id. at p. 11.

In the hospital, Mr. Corcino told Officer Torres that three individuals battered him using

their fists, and using a stick.  Id. at p. 12.  He identified the persons by their nicknames, including

Fosforito.  Id. at pp. 12, 15.  Also, Mr. Corcino informed Officer Torres that the individuals that

struck him told him that he was a snitch.  Id. at p. 31.  He stated that one of the individuals held

onto him, another struck him with his fist, and another one hit him with the stick.  Id. at p. 32.

Consistently with this testimony, as set forth in Defendant's Exhibit B (PRPD Interview Notes),

the version of the events Mr. Corcino gave to the PRPD on June 7, 2016, essentially confirms the

account he provided while testifying in court, including his participation in the event.

Defendant points out that Mr. Corcino admitted to an extensive history of criminal activity.

Id. at pp. 9-10.  But that activity does not detract from the crux of the testimony directly implicating

defendant in the assault.  During cross examination, Mr. Corcino was asked how many times he

had been taken to a hospital by emergency medical technicians over the last three months, and he

said twice.  Id. at p. 111.  On one occasion, it was because of a case in which he had been hit with

a pistol.  Id. at p. 111.

Likewise, Mr. Corcino was asked if he consumed or sold cocaine, and he answered no (id.

at p. 112), stating that in 2011 he did a favor to an undercover agent and ended up in prison for

---

[10] Exhibit One consists of pictures showing Mr. Corcino with lacerations in the cranium area, a cut in the eye, which could not be opened, and dry blood in the hand and chest.  Id. at p. 26.

selling crack to an undercover agent.  Id. at p. 113.  As a result, he said that he served three years in jail.  Id.  In 2008, he stated to have been arrested for attempted murder.  Id. at p. 116.  He explained that he tried to kill one Garay Rivera with a "mocho" (a machete for chopping).  He and Mr. Rivera were both under the influence of alcohol, had a fight, and he cut Mr. Rivera with a "mocho" in the chest.  Id.

In 2015, Mr. Corcino threw a can of sausage on the face of one José Luis Smith because Smith had slapped him.  Id. at p. 117.  Smith told Mr. Corcino that he was going to kill him, and Mr. Corcino responded that he was going to put Smith in the cemetery.  Id.  Mr. Corcino pled guilty.  Id.  At the time of the incident, he was under the influence of alcohol.  Id. at p. 118.  He told the arresting officer that Smith had slapped him and he defended himself by hitting Smith.  Id.  He said he had been charged with aggravated assault and simple battery, and "they left it" at simple assault.  Id. at p. 119.

In February 2016, Mr. Corcino was arrested after he took a stick from the hands of one Chito Mulero and hit him with the stick in the head and leg because "there were two of them against him."  They wanted to hit him with a rod and ran after him.  Id. at p. 120.  Both Mr. Corcino and Mr. Mulero were taken to the hospital.  Id.  In the end, there was no trial.  Id. at p. 121.  On June 1, 2016, Mr. Corcino was assaulted with a pistol.  Id. at p. 122.  He was hospitalized.  Id. at p. 122-123.  Counsel asked Mr. Corcino if he had initially accused defendant as being the person who hit him, but Mr. Corcino did not have any recollection of that.  Id. at p. 123.  And he repeated that defendant hit him with a punch on June 6th.  Id. at p. 126.  Through the line of questioning, it

was not shown to the court's satisfaction that Mr. Corcino was incapable of perceiving and recalling relevant events accurately.[11]

Defendant states that Mr. Corcino testified that prior to June 6, 2016, he had never had any interaction with him (Docket No. 68 at p. 10). But the question posed was, "So according to your testimony, you had never had any prior interactions with any of the individuals who assaulted you on June 6, including Mr. Rentas [the defendant], is that right?" In turn, Mr. Corcino answered "No problems with them ever" (Transcript at p. 102). If the line of inquiry sought to establish a motive for the witness to be less than truthful, it did not accomplish its purpose.

The court is persuaded by a preponderance of evidence that defendant (and two other individuals) assaulted Mr. Corcino with a wooden stick and their fists on June 6, 2016. Defendant personally attacked Mr. Corcino with his fists. The assault required hospitalization to treat Mr. Corcino for the wounds he received during the attack.

## C. Sánchez-Valle

Defendant contends that Sánchez-Valle precludes a finding that he committed a state crime, because the CFI found no cause to indict him (Docket No. 68 at p. 6). Otherwise, he claims, he would be exposed to double jeopardy. Id. In Sánchez-Valle, the Supreme Court held that because the ultimate source of Puerto Rico's prosecutorial power is the Federal Government, the Double

---

[11] The government objected to this line of questioning on relevance and other grounds (Transcript at pp. 106, 108, 110, 111, 112, 113, 124, and 127). The court overruled most of the objections, id., but the questions could have crossed the line of inadmissible propensity evidence. Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith, but may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). Defendant characterizes the evidence as evidence of "motive," because as he has described it, Mr. Corcino "has aggressively and violently assaulted various victims, resulting in their respective hospitalization and his incarceration – all of whom … have a clear and distinct motive to seek revenge against Mr. Corcino" (Docket No. 68 at p. 2). Yet none of those individuals testified nor evidence presented in any form about their whereabouts during the day of the event or their connection to the assault. At any rate, the Rules of Evidence do not apply in revocation hearings – Fed.R.Evid. 1101(d)(3) – and there was no jury or corresponding need to determine whether the evidence satisfied the hurdle for exclusion set in Fed.R.Evid. 403. See, United States v. Sebaggala, 256 F.3d 59, 67 (1st Cir. 2001)(describing framework governing admissibility of "bad acts" evidence under Fed. R. Evid. 404(b)). In the main, Mr. Corcino's answers were precise. He was not evasive about admitting responsibility for his prior acts, explaining to the court's satisfaction his participation in all of the incidents to which the questions referred.

Jeopardy Clause bars both Puerto Rico and the United States from prosecuting a single person for the same conduct under equivalent criminal laws. Id. at p. 17. Contrary to what defendant argues, however, the Double Jeopardy Clause, and by extension, Sánchez-Valle, are not a bar to revocation here.

First, the Supreme Court has "consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge." See, Serfass v. United States, 420 U.S. 377, 388 (1975)(quoting United States v. Jorn, 400 U.S. 470, 479 (1971)). The preliminary examination of one arrested on suspicion of a crime is not a trial; and his discharge by the magistrate upon such examination is not an acquittal. Collins v. Loisel, 262 U.S. 426, 429 (1923). Similarly, the purpose of the preliminary hearing in Puerto Rico is to assess probabilities, not to determine guilt or innocence. See, Pueblo v. Rodríguez-Aponte, 116 D.P.R. 653, 663-664 (1985), 16 P.R. Offic. Trans. 798 (so recognizing). And because guilt or innocence is not determined at a preliminary hearing, jeopardy does not attach. See, Johnson v. Watson, 2005 WL 1126664, *2 (M.D. Fla. May 5, 2005)(so holding in rejecting double jeopardy challenge to conviction following amended information charging defendant with same charges that had been previously dismissed in a preliminary hearing).[12]

Second, as stated above, a revocation proceeding is not a criminal proceeding. See, Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984)(so recognizing); United States v. Roy, 438 F.3d 140, 143 (1st Cir. 2006), cert. denied, 548 U.S. 919 (2006)(same). Nor is it the equivalent of a criminal prosecution. See, United States v. Miller, 797 F.2d 336, 340 (6th Cir. 1986)(so noting).

---

[12] In like manner, the Double Jeopardy Clause "does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so." See, United States v. Williams, 504 U.S. 36, 49 (1992).

United States of America v. Iván Rentas-Félix
Criminal No. 10-433 (PAD)
Opinion and Order
Page 19

A defendant may be both punished for the supervised release violation and prosecuted criminally for the same conduct without implicating principles of double jeopardy. See, United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008)(articulating principle).[13] And so, the Double Jeopardy Clause does not prevent the government from prosecuting an individual after a court finds absence of probable cause to revoke probation based on the activities giving rise to the prosecution. See, Miller, 797 F.2d at 327, 341 (so holding). Given the absence of double jeopardy implications, where the same alleged conduct forms the basis for a dismissed criminal charge and a proposed revocation, courts have not found in the criminal procedure a limitation on revocation under federal law.[14]

1. Federal Courts

In United States v. Correa-Torres, 326 F.3d 18 (1st Cir. 2003), defendant pleaded guilty to violating 21 U.S.C. §§ 841(a)(1) and 2. He was sentenced to a five-year term of imprisonment, to be followed by a five-year term of supervised release. One of the terms of supervised release prohibited him from committing any federal, state, or local crime. Two years after his discharge from prison, he was charged in Puerto Rico with beating and threatening his girlfriend and damaging her car. The charges were eventually dropped.[15] At the revocation hearing, defendant's

---

[13] In a similar setting highlighting difference between a revocation proceeding and a criminal proceeding, see, United States v. Collazo-Castro, 660 F.3d 516, 523 (1st Cir. 2011)(concluding that "Fourth Amendment does not require a warrant based on oath or affirmation to revoke an individual on supervised release"); United States v. Jiménez-Torres, 2010 WL 2650318,*4 (D.P.R. June 30, 2010)(holding that "exclusionary rule does not apply to supervised release revocation hearings and does not forbid the use of evidence obtained in violation of the Fourth Amendment in such proceedings"). See also, Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 367-368 (1998)(declining to allow application of exclusionary rule in parole revocation proceedings, even considering the possibility that the officer performing the illegal search knows that the subject of the search is a parolee").

[14] Defendant urges the court to follow United States v. Santiago-Colón, Crim. No. 15-396 (GAG), where the sister court held that a Commonwealth final judgment suppressing identification evidence in a prosecution for attempted murder and violations of the Puerto Rico Weapons Law has preclusive effect on a federal prosecution charging the same defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Docket No. 68 at p. 6). There is no need to examine the scope of Santiago-Colón because it is predicated on Sanchez-Valle, and as noted above, the Double Jeopardy Clause is not implicated here.

[15] The girlfriend refused to cooperate with the local authorities.

lawyer stated that defendant would not contest the charge but asked the court to be as lenient as possible, emphasizing that the local court had dismissed the domestic violence complaint and the defendant had an otherwise untarnished record during supervised release.

The court did not inquire of the defendant either as to his understanding of his rights or as to his guilt, and defendant did not speak at all throughout most of the proceeding, relying instead upon a court-appointed interpreter to follow the ongoing dialogue.  Yet the court revoked the term of supervised release.  Defendant challenged the revocation, arguing that his waiver of rights was insufficiently informed.  The First Circuit overturned the revocation on the waiver issue.  But as relevant here, it distinguished between dismissal of the state charges and the facts underlying those charges, pointing out that even though the state charges were dismissed, the underlying facts were never clearly set forth in the revocation proceeding.  Similarly, it observed that "the absence of conviction was beside the point," inasmuch as "revocation of supervised release could be ordered as long as the [defendant] had committed a proscribed act."

In United States v. Lapinski, 993 F.2d 1531, 1993 WL 138528 (1st Cir. May 3, 1993), defendant pled guilty to violating 18 U.S.C. 1029(a)(3), and was sentenced to a twenty-seven month term of imprisonment and a three-year term of supervised release.  Among the conditions applicable to supervised release was that defendant not commit another federal, state, or local crime.  Upon his release from prison, defendant was arrested and charged with two counts of sexual assault in the second degree.  He entered a plea of *nolo contendere*, and at the request of the federal probation officer, a supervised released violation hearing was held in federal court.  Based on the evidence presented during the hearing, the court revoked defendant's term of supervised release.

Defendant challenged the revocation, claiming that evidence of his *nolo contendere* was improperly admitted and that he should have been allowed to confront and cross-examine the

alleged victim, who did not testify but whose criminal complaint report was presented in evidence. The First Circuit rejected the challenge, observing that revocation of supervised release does not require a conviction of a separate federal, state, or local crime. Instead, it held that a supervised release violation may be found whether or not the defendant has been the subject of a separate prosecution for such conduct, where the revoking court bases its decision, not on the plead of nolo contendere or resulting state conviction, but on the evidence presented at the revocation hearing.

In Perry v. U.S. Parole Com'n, 831 F.2d 811 (8th Cir. 1987), *cert denied* 485 U.S. 963 (1988), defendant was sentenced in 1975 to a twenty-five year term of imprisonment for armed bank robbery. Subsequently, he was released on parole and charged in federal court with conspiracy to commit bank robbery. The charge, however, was dismissed before trial. Nevertheless, the Parole Commission revoked defendant's parole. He argued that the Commission should not have considered the dismissed charge as a basis for revoking his parole. The Eighth Circuit disagreed, holding that the Commission may consider charges that have been dismissed before trial as grounds for revocation, provided it makes its own independent finding of new criminal conduct. Id.[16]

In United States v. Lewis, 475 F.Supp. 156 (E.D. Mich. 1979), defendant was placed on probation after having been convicted of violating 18 U.S.S.C §§ 2314 and 2. The first condition

---

[16] Supervised release, probation and parole are all different forms of conditional release from prison. See, United States v. Weikert, 504 F.3d 1, 7 n.4 (1st Cir. 2007)(so observing). Supervised release is a period of community supervision imposed by the court, overseen by the court rather than the Parole Commission, to be completed after release from a jail or prison sentence. Id. Probation is an alternative sanction to imprisonment, in which the court permits a convicted offender to serve his or her sentence in the community subject to certain conditions and supervision by a probation officer. Id. Parole is similar to supervised release in that it consists of a period of community supervision to follow a prison term. Id. After the Sentencing Reform Act of 1994, Pub. L. No. 98-473 (codified as amended at 18 U.S.C. §§ 3551-3742), parole is no longer a valid status for new federal offenders. See, Weikert, 504 F.3d at n.4 (citing statute and Johnson v. United States, 529 U.S. 694, 696-697 (2000)). However, the standards and interests involved are essentially the same in the supervised release, probation and parole revocation contexts. See, United States v. Gravina, 906 F.Supp. 50, 53 n.1 (D. Mass. 1995)(so recognizing). Thus, violations of conditional release are functionally equivalent. See, U.S.S.G. Ch. 7, Pt. B, Intro. Comment (articulating principle in connection with probation and supervised release).

of probation stated that he refrain from violating any law.  The government claimed he violated this condition by participating in an armed robbery of persons in a home.  The charge, however, was dismissed at a preliminary hearing.[17] The Court rejected defendant's claim that his probation could not be revoked, noting that a probation revocation hearing can proceed regardless of trial is pending or the charges have been dismissed.  It pointed out that although probation revocation could not be premised on a charge of violating a law, it could be premised on the proof of such a violation.  Finding the evidence showed that the probationer engaged in armed robbery, the court revoked the probation.

2.  State Courts

In general, state courts have followed a similar approach.  For example, in Reyes v. Tate, 742 N.E.2d 132 (Ohio 2001), defendant was placed on a 2-year probation after having been convicted of attempted robbery.  Thereafter, he violated the terms of his probation and was incarcerated but was subsequently paroled, and ordered not to visit the residence of his ex-girlfriend without the parole officer's written permission.  Notwithstanding the restriction, he was charged with having gone to the ex-girlfriend's home, damaging her screen-door window by throwing a hammer through it, and beating up her new boyfriend by hitting him repeatedly with a piece of wood.  The state entered a *nolle presequi* on the charges and the Parole Board revoked his parole based on the conduct underlying the charges.  The Board relied on the same conduct in deciding not to parole him and to have him.  The defendant claimed that the state's dismissal of the charges removed all factual support for them and that the Parole Board's continued reliance on the alleged conduct violated his constitutional due process rights.

---

[17] The prosecution witness failed to appear and testify.

The State Supreme Court held that parole may be revoked even though criminal charges based on the same facts are dismissed; or the defendant is acquitted or the conviction is overturned, unless all factual support for the revocation is removed.  Given that the state dismissal of the felonious assault and aggravated burglary charges against defendant did not remove all factual support for the revocation and the attachments to defendant's parole petition had substantial evidence to support the finding that he committed the charged violations, the Court rejected defendant's claim.

Likewise, in Mathis v. State, 477 So.2d 520 (Ala.Crim.App. 1985), defendant pleaded guilty to a second degree assault charge.  He was sentenced to two years in prison, which was later suspended, and placed on probation.  Subsequently, he was charged with violation of probation, for having been involved on liquor theft.  After a revocation hearing, defendant's probation was revoked.  He alleged that the trial judge abused his discretion by revoking probation prior to the grand jury's having had the opportunity to review the charges lodged against him, and that the grand jury returned a "no bill" on the alleged liquor theft.  The Court of Appeals held the fact that a "no bill" was returned by the grand jury was not dispositive, as the trial judge need only be reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.  And in the case, there was clearly sufficient evidence from which the trial court could conclude that defendant violated the terms of his probation by committing a new crime.

3.  Puerto Rico

Within the framework of the Rules of Criminal Procedure of Puerto Rico, P.R. Laws Ann. tit. 34, App. II, a felony prosecution may be broadly divided into five basic phases: (1) criminal complaint ("denuncia") and initial hearing before a magistrate to determine if probable cause exists to arrest (Rule 6); (2) in the event probable cause is found under Rule 6, preliminary hearing before

a magistrate to determine if there is probable cause to indict (Rule 23);[18] (3) should probable cause to indict be found, return of indictment ("presentación de acusación") (Rule 24); (4) arraignment ("lectura de acusación")(Rule 52); and (5) trial (Rule 111).[19]   In the absence of probable cause to indict, the process finalizes.  See, Pueblo v. Ríos-Alonso, 149 D.P.R. 761, 768 (1999)(so holding). For that reason, the prosecution is precluded from trying the defendant and, by extension, from obtaining a conviction in connection with the offense for which no probable cause to indict is found.   But review of institutional authorities show the same interplay between revocation proceedings and dismissed state charges as previously discussed.

The Puerto Rico Suspended Sentence Act, Law No. 259 of April 3, 1946, P.R. Laws Ann. tit. 34 §§1026-1029, confers upon Commonwealth courts the authority to suspend sentences.  It was amended by Law No. 31 of May 29, 1986, to establish the procedure courts must follow to revoke probation. The House of Representatives' Commission of Juridical Penal Affairs recommended that the corresponding bill be enacted.  See, Report on House Bill 701, April 1986 at p. 7. The Report recommending enactment discusses probation in general, its characteristics and philosophy, and how it could be revoked, including the grounds to do so.  Id. at pp. 1-7.  To this end, it points out that: (1) probation may be revoked even when conduct at issue were not a crime; (2) a conviction of crime is proof sufficient to establish a violation; (3) the probationer does not

---

[18] The right to the preliminary hearing is statutory, not constitutional.  See, Pueblo en Interés del Menor G.R.S., 149 D.P.R. 1, 18-20 (1999)(so pointing out in discussing characteristics of preliminary hearing).  A second preliminary hearing ("Vista Preliminar en Alzada") is available in the event "no probable cause" is found to indict as charged, or probable cause is found to charge, albeit for an inferior offense.  See, Pueblo v. Cátala-Morales, 2017 TSPR 6, 11 (explaining grounds for second preliminary hearing); Pueblo v. García, 151 D.P.R. 783, 789-790 (2000)(same).

[19] In this framework, other rules regulate related issues such as bail, discovery, suppression, grounds for dismissal, jury selection, and post-trial motions and procedures.  Thus, the process may also be divided into the following phases: (1) the investigative phase (from the immediate investigation up to arrest and probable cause to indict); (2) the adjudicative stage (trial); and (3) sentencing and post-judgment procedures.  See, El Vocero v. E.L.A., 131 D.P.R. 356, 421 (1992)(so describing process), rev'd on other grounds, 508 U.S. 147 (1993).

have to be found guilty for probation to be revoked; and (4) **revocation is appropriate even when the dismissal of charges have been requested due to insufficiency of evidence** (court's translation)(emphasis added).  Id. at p. 7 (quoted in Pueblo v Rosa-Atiles, 128 D.P.R. 603, 612 (1991)(concurrent opinion).[20]

In Junta de Libertad Bajo Palabra v. González-Collazo, KLRA 2010-1114, 2011 WL 1465517 (P.R. Court of Appeals Jan. 27, 2011), the Puerto Rico Parole Board revoked defendant's parole after defendant was charged in a criminal complaint and arrested for illegal trade of vehicles and vehicle parts in violation of the Puerto Rico Vehicular Protection Act.  The CFI found probable cause but ultimately dismissed the charge on speedy trial grounds.  The Appeals Court held that the dismissal of a criminal charge did not impede the administrative parole revocation process based on the same underlying facts.  However, it overturned the revocation, pointing out that no witness testified before the Parole Board to describe or prove the facts alleged in the criminal complaint.

In Pueblo v. López-Cintrón, KLAN 2009-0771, 2010 WL 1513728 (P.R. Court of Appeals Jan. 20, 2010), the CFI revoked defendant's probation after he was arrested for violating the Controlled Substances and Weapons Acts of Puerto Rico.  No probable cause was found to indict the defendant for the offenses.  The Appeals Court overturned the revocation, observing that defendant had been exonerated of the offenses, which would in its view, eliminate the legal basis for revocation yet emphasizing that although drugs and firearms led to the filing of charges, the intervening police officer testified that no such drugs or firearms were seized.  Even more, a

---

[20] The Report reads: "Por otro lado, se ha sostenido, en la jurisdicción federal, que conducta no constitutiva de un delito puede dar base a la revocación de la probatoria, que la comisión de un delito es prueba sufifciente para sostener la violación de la probatoria, que imputado un delito, no tiene que resultar culpable el probando para que se le revoque la probatoria, bastando que viole las condiciones impuestas a ésta.  Además, que procede la revocación de la sentencia suspendida aún habiéndose solicitado el archivo de los cargos por insuficiencia de prueba."

United States of America v. Iván Rentas-Félix
Criminal No. 10-433 (PAD)
Opinion and Order
Page 26

witness admitted in the revocation hearing that there was no evidence to link the defendant with criminal activities. Thus, consistently with the position expressed in the legislative report, the Court looked beyond the bare fact that a charge was dismissed, and evaluated whether the evidence presented in the revocation hearing was sufficient to conclude that defendant engaged in the behavior underlying the charge.

### 4. Meaning of Condition that no Crime be Committed

This survey persuades the court that in connection with the condition that a supervised releasee not commit another Federal, State, or Local crime, "[t]he key is whether the . . . [defendant] *committed* the new crime . . ." (italics in original). See, 2 Cohen, *The Law of Probation and Parole*, §19.10 at 19-19 (2d Ed. 1999). In contrast, if "the revocation was specifically for a new conviction rather than for the conduct involved in the new charge, a reversal of the conviction or any other legal proceeding preventing that conviction from becoming a binding judgment will bar the revocation". Id. at § 8.5.[21] Given that revocation here would be predicated on criminal conduct instead of a conviction, a final "no probable cause" to indict in Puerto Rico would not preclude revocation under 18 U.S.C. § 3583.

The centrality of conduct in the revocation process mirrors its role on the consequence of revocation itself. To that effect, Section 7B1.1, Application Note No. 1 of the Sentencing Guidelines states that a violation of the condition that defendant not commit a crime "may be charged whether or not the defendant has been the subject of a separate federal, state or local

---

[21] The Puerto Rico Supreme Court cited with approval the first edition of this treatise in Pueblo v. Contreras, 139 D.P.R. 604, 611 (1995). See also, Rosa Atiles, 128 D.P.R. at 614 (citing first edition of treatise to the effect that: "Revocation … does not always require a new conviction. It can be based in new criminal acts, which may or may not engender a new criminal conviction. All that is needed is sufficient proof of the illegal acts to satisfy the burden of proof used by the jurisdiction in revocation proceedings. Thus, in some jurisdictions a probationer or parolee's new criminal behavior can justify a revocation if the decisionmaker is satisfied by a preponderance of the evidence that the illegal acts took place").

prosecution for such conduct." According to the note, the grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Id. Rather it depends on the defendant's actual conduct. Id. See, United States v. Willis, 795 F.3d 986, 992 (9th Cir. 2015), cert. denied 136 S.Ct. 2543 (2016)(noting that the court may revoke the defendant's supervised release if the defendant's conduct constituted a crime whether the defendant was the subject of a separate prosecution or not).[22] The separate prosecution is irrelevant. In consequence, the distinction between charge, conviction, and conduct stands to define conduct as the critical element for appropriate court action in light of the imputed violation to sustain a revocation finding.

### III.    CONCLUSION

Considering the lack of probable cause to indict, defendant cannot be convicted in Puerto Rico for the offenses leading to his arrest. But that does not preclude revocation of supervised release, when the preponderance of the evidence shows that he engaged in the proscribed conduct. As discussed above, such is the case here.

Double Jeopardy, and by extension, Sánchez-Valle do not require a different result. Preliminary hearings in Puerto Rico do not place defendants in jeopardy of being convicted, and

---

[22] See also, Correa-Torres, 326 F.3d at 18 (distinguishing between conviction and proscribed conduct in context of revocation proceeding); Wilson v. Gray, 345 F.2d 282, 286 (9th Cir. 1965)("Upon careful consideration of the relevant portions of the record in this case, we are of the opinion that the record clearly indicates that the … decision revoking appellee's probation was predicated upon the appellee's conduct, only a portion of which constituted the offense of which he was charged and for which he was convicted, and not solely by reason of his conviction for that offense"); State v. Dorest, 778 So.2d 1239, 1248-1249 (La. App. 2001)(distinguishing between conduct and conviction such that revocation required that defendant either (1) commit a felony, or (2) be convicted of felony or misdemeanor); Martínez v. State, 635 S.W.2d 762, 767 (Tex. App. 1982)(rejecting defendant's argument that revocation should be overturned because conviction was on appeal; revocation was based on the fact that defendant committed aggravated robbery rather than on a conviction for aggravated robbery); Hutchinson v. State of Maryland, 407 A.2d 359, 362 (Md.App. 1979)("A revoking judge may rely on the recorded conviction of another judicial factfinder that a probationer violated the law, but when the foundation for the conviction relied upon falls, so must the judicial structure build upon it … Obviously this is not true unless the fact of conviction was the Sole basis for the revocation order. If facts were before the revoking judge sufficient … to persuade him that the probationer had not obeyed the law, the revocation would stand with or without a conviction originally … or reversal subsequently"); State v. Robertson, 327 A.2d 556, 559-560 (Conn. 1973)("If revocation is based on a finding of conduct, then a reversal of a conviction resulting from the conduct ordinarily does not affect the revocation; but if conviction is the sole ground for revocation and the conviction is reversed, then the basis for revocation no longer exists").

revocation proceedings are not a criminal prosecution where any such danger exists. Further, there are no discovery violations justifying exclusion of evidence relevant to the factual findings in this case.

In light of the foregoing, to the extent the government requests that defendant's supervised release be revoked, the request is GRANTED. Nonetheless, to the extent it requests that defendant be imprisoned to the maximum term of the sentence, the request is DENIED WITHOUT PREJUDICE. Defendant will be provided with the opportunity to address the court before sentencing.

**SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of February, 2017.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO HERNANDEZ
United States District Judge